Mr. Wadding May it please the court Counsel Good morning, Your Honor. My name is Scott Wadding. I represent James Brown in this appeal from the Southern District of Iowa's dismissal of Dr. Brown's 1983 claim for First Amendment retaliation. For about 40 years, the United States Supreme Court has said that when a State employee performs their job duties as required within the scope of their employment, that a State employee acts under color of law. In this case, the amended complaint specifically alleges that the defendant, Marc Linder, retaliated against Dr. Brown for his participation in First Amendment-protected activity while acting within the scope of defendant Linder's employment as a University of Iowa professor of law. In its pleadings and its motion to dismiss, my reading of the State's motion to dismiss was that the State agreed that Mr. Linder was acting within the scope of his employment. And yet the District Court dismissed Dr. Brown's complaint saying that, in fact, the complaint failed to plausibly plead that Linder was acting under color of law as required under 1983 and further that the allegations did not rise to the level that would chill a person of ordinary firmness. Counsel, so isn't there a difference though between doing something that is simply within the scope of one's employment, even if it's government employment, and exercising State power? Your Honor, I think West v. Atkins directly addresses that question because West v. Atkins says, and that came after the Dodson case, which is what the State relied on in the pleadings. But West v. Atkins says, we adopt the Lugar test to determine if it's State action for purposes of the 14th Amendment, it's under color of law. Those States are interrelated in that respect. And so the question, Judge Gratz, that you're getting at is when you have cases where a public official is acting outside of the four corners of the scope of their employment, the courts do look to see whether, for example, the case that's cited by the State is the McGee case. That was a police officer who wrote an editorial in his purely private capacity and to advance the purpose for the Police Federation, which was also a private entity. And in that case, the McGee court looked at the traditional rule of under color of law and said he didn't use the power of his office when he wrote the editorial and he was doing it for purely personal pursuits and therefore he wasn't acting under color of law. This case is different. This case, it's my understanding, it's undisputed. In the First Amendment complaint, plausibly pleased that Linder was acting within the scope of his employment. The State, in fact, in the proceedings below, argued that the complaint did not plausibly allege Linder acted outside the scope of his employment at all times. And so we have, in my view, a simple case. It's a simple case where we apply the general rule under West v. Atkins that says when a public employee is acting within the scope of their employment, they act under color of law. Except, or unless, they're a public defender whose position is adverse to the State. And that's really the only exception that the United States Supreme Court has recognized as we've briefed is that of a public defender who's taking an adverse position to the State. So counsel, help me understand this. A professor, of course, has First Amendment free speech rights under the Constitution. And the exercise of those rights are usually within the scope of their employment. And even assuming they were in this case, I'm still having trouble seeing how that's exercising State power rather than just exercising their First Amendment rights. Well, the Garcetti case kind of leaves the question of academic scholarship open. So we don't exactly know what the contours of a public employee who's also a college professor, when they make statements and scholarship in the scope of their employment, to what extent does the First Amendment apply in that context. I think the Court's going to work that out after the Garcetti and work that through. But in this case, under West v. Atkins, if they're acting within the scope of their employment, it's under color of law. Unless there are some countervailing reasons for the courts to say that that State actor's not acting under color of law. In the Dodson case, that was a public defender who takes literally a position adverse to the State. It's hard to say that a public defender in that context could be acting under color of law under those circumstances. We've also cited the Montana case, which is the only case that I could find in the Eighth Circuit where the Court went beyond Dodson. This is an Eighth Circuit case. I went beyond Dodson and said that clergy do not act under color of law. And if you look at the analysis both in Dodson and in the Montana case, what the Court's really looking at is text and tradition in many ways. For the Dodson case, when we talk about the public defender, private attorneys were traditionally adverse to the State. And that's rooted in the constitutional text in the Sixth Amendment. In the Montana case, the Court also applied the functional test, what it identifies as the functional test in Dodson, and said clergy... What's this Montana case? It's in the reply brief, Judge. Oh, for God's sake. So the Montana case is the one other case that we could find that says... These are all ancient. Well, the Montana... Yeah, so this is... 1997. That's right. And Dodson and Atkins is 1988. I mean, there's a lot of water over the dam on these issues since then. I think... Here we are just debating ancient cases. I think that's a fair statement, Judge. And I think when you look at the traditional test that was applied by the District Court in this case, applying McGee, that says that you have to exercise State power. I think that that observation is diluted in this stream of cases that have come since then in Dodson, in the Montana case, and in, more specifically, the West v. Atkins case. Because in these cases, it's a very... Which is now. Which is... How many years? 34 years? It's about 40 years, Judge. Well, Counsel, McGee v. Hamlin University, that's 2014, right? That's the McGee case, and that's the one... Yeah. That's correct, Judge. And in that case, we said this exercise of State power has to be possible only because the wrongdoer is closed with the authority of State law. So in this case, we have speech. Why is it made possible only because of his being closed with the power or authority of State law rather than his inherent First Amendment rights? I have to push back a little bit with the premise of the question, Judge, because McGee cites West. McGee was involved, a police officer who was pursuing purely private interests in that case. So he was acting outside the scope of his employment. And I don't take issue where someone is acting outside the scope of their employment, whether there's a closer question on whether they're exercising State power to retaliate against somebody. So under the West v. Atkins test, which is cited by McGee, if they're acting within the scope of their employment, generally speaking, they are acting under color of law, unless one of the narrow exceptions recognized by the Supreme Court, Dodson, or in the Eighth Circuit, Montana, applies. Nevertheless, even under the McGee case, we pled that the actions in this case satisfy that standard. Because in our view, as we pled in the complaint, a law professor has a unique voice when it comes to gaining credibility with his audience in the context of legal proceedings and expert witnesses. And in this case, Dr. Brown testified as an expert witness in a legal proceeding that was brought against a private port company by the State Labor Commissioner. And Dr. Brown provided truthful testimony. And as we have alleged in the complaint, Linder launched a retaliatory campaign that involved multiple defamatory faults. So it's spread about the testimony, about Dr. Brown's qualifications, about Dr. Brown's ethics. And if we take the amended complaint as true... Isn't defamation outside the scope of his employment? The State has... I don't think that there's a dispute over whether Linder was acting within the scope of his employment. I think that as the pleadings stand today on appeal, I think it's agreed that Linder at all times is acting within the scope of his employment. And we've cited those in the briefs. And I could just mention it, Motion to Dismiss, page 20. That's Joint Appendix, page 45. And the Motion to Dismiss, page 19. Joint Appendix, page 44, is where I get that. And so, this is a unique case in the sense that we've all agreed that Linder's acting within the scope of his employment. The question is, what do we do with that? And it's our position that unless he's clergy or unless he's a public defender, he is acting under color of law given the unique procedural posture of this case. Can I come at it from a different angle? Yes. About the qualified immunity angle. What makes it clearly established that your client has a right to be free from criticism or harassment from a public university professor? So, it's an interesting question. And first, we have pled an injunctive relief. And so, it's our view that qualified immunity would not apply to our claim for injunctive relief to stop Linder from engaging in this behavior going forward. So, the case cannot completely be resolved on the qualified immunity grounds for that reason alone. But I think more broadly speaking, there's well-established U.S. Supreme Court precedent and Eighth Circuit precedent that addresses this issue of whether a government official can retaliate against somebody for participating in their First Amendment-protected activity. That is well-established. And that can take many forms. And I understand that there's case law that tries to dial it in to be more specific. But in this case, what we have is a professor of law that we've alleged has engaged in a broad-based campaign to discredit falsely this doctor who was engaged in First Amendment-protected activity. And we've cited the Baraboo v. City of Minneapolis case from the Eighth Circuit that says, a citizen's right to exercise First Amendment freedoms without facing retaliation from government officials is clearly established. And there are other cases that we've cited as well. I've also cited the City of Park Hills case that cites the BART case. And the Garcia case that cites the BART case that says even little harassment, if you look at the cumulative effect, can constitute a First Amendment violation. And so in this case, we've alleged severe harassment because that's what we believe happened. And so under the BART case itself and Garcia and Park Hills and, more broadly speaking, our case law that talks about the prohibition on retaliation for engaging in protected activity, under those cases, we believe it is clearly established. And certainly at the motion-to-dismiss phase, it would be premature in our view to dismiss it on those grounds until we have a full opportunity to discover the case. So for these reasons, we ask that the district court judgment be reversed. Thank you. Mr. Langholtz? May it please the Court, Mr. Wadding, Sam Langholtz here representing Professor Mark Linder. The district court correctly dismissed this First Amendment retaliation claim for two independent reasons. Dr. Brown didn't allege a plausible claim that Professor Linder acted under color of law, and he didn't allege retaliatory conduct that would chill a person of ordinary firmness. And in order to reverse the district court, both of these reasons would need to be reversed. Let me tell you what's bothering me the most about this case, is that after this was dismissed and the supplemental jurisdiction was declined, as I understand it, your Solicitor General told the state court to dismiss all claims in state court under official immunity. Did it occur to anybody in your office that taking conceptually inconsistent positions in federal and state court, which would leave the plaintiff with no remedy anywhere, was so unconscionable as to be unlikely to fly? Your Honor... And don't give me all the legal distinctions. I'm asking, it's not an ethical question. It's a, you know, should we really do this question? I understand the issue that you're raising, Judge Loken. The positions in state and federal court were not inconsistent. The state, as Mr. Wadding correctly points out, in federal court as well, did not contest that this was within the scope of employment and sought to dismiss the state law claims for the same reason. I didn't want to hear that. I don't want to hear that. I know I can create all without even study, without all the distinctions you can draw. But if I were so inclined to rule that way, or we were, what would we do? So it seems to me we would reverse the motion to dismiss, vacate the dismissal of the state law claims because the defamation claim clearly survives the federal claim, and leave the federal court to decide which of the claims goes forward or do they all fail. Then at least we would have one jurist decide, applying both laws, which apply to multiple claims, decide is there really nothing here or is there something but not something else. What's wrong with that disposition? I'm not sure that the vacature order is before, or the remand order, rather, is before this court. Well, I think, well, I'm not saying that we could do anything about the state court electing to proceed if it now has jurisdiction, but we could send a message that maybe you shouldn't, maybe you ought to wait and let the federal court decide the supplemental jurisdiction. The federal court should not have declined supplemental jurisdiction, in my view, which is maybe totally off the wall. But if that's the case, then on remand, the court could, after further review or consideration, adhere to the dismissal of the federal claims and proceed to decide whether there's plaintiff has any valid claims under state law. That, to me, is the way this should have been done. Well, the state certainly did consider whether we should appeal the remand order to try to keep the case in one place rather than splitting. The state did not argue to have the state law claims remanded back to the district court, but we chose not to file a cross-appeal. The state case is still proceeding. The scope of employment certification was not accepted by the state law court. There is an order on that motion to dismiss that concluded it was inappropriate, it didn't have a basis to dismiss those state law claims. So that case is currently in active litigation at this point as well. And again, with the state law claims remanded and no longer in federal court, I struggle a bit with how the district court would have jurisdiction to continue proceeding with those claims. Again, the Godson case in the Supreme Court, and I recognize it's from some time ago, makes clear that state employment does not equal color of state law. And this court has also continued to clarify that. I think the Montana case cited in the reply brief by Applee actually supports Professor Linder's position here as well. It's a unique situation like a prison clergy where the state employee is hired to exercise independence And similarly, the Ottman case, which was cited in the amicus brief, supports the proposition that when you have colleague-on-colleague harassment, that that's not state action. The McGee case, as Judge Graz pointed out, does make clear that there needs to be some exercise of power, and ultimately there is no exercise of state power that's occurring here. The closest that Dr. Brown raises is that you hear today that the law professor has a unique voice or the prestige of that position somehow is an exercise of state power. Well, what bothers me are the articles in the public newspapers, in which he dramatically, graphically, whatever, makes clear his eminent position as a professor. Therefore, it gives all kinds of boost to the labor law points he's making. That, it seems to me, is going way beyond, I'm just a private citizen when I'm doing these things. The article written by a reporter does reference that he was a professor. The opinion piece that Professor Linder wrote does reference that he was a professor, much like in McGee the letter to the editor referenced that the individual was a police officer. I think to the extent there's extra prestige, it comes from the fact that Professor Linder is a law professor, rather than the fact that he's a law professor at a state university. There's no additional power of the state that's being exercised in a way that is different than if, say, Professor Linder were a professor at Harvard, that's a private university that, again, perhaps has greater weight because of the expertise and such, but not by an exercise of state power. Again, even setting aside the color of law arguments, this case also squarely fits within the First Amendment retaliation jurisprudence of this court as not rising to the level of chilling a person of ordinary firmness. The district court correctly concluded that these are less serious facts than even the Knock case, which was a case where this court concluded that didn't rise to the level of chilling a person of ordinary firmness. There, there was an audit of a lady's auxiliary, repeated at public city council meetings, the city officials making comments, a letter that was circulated about allegations that the plaintiff's child was with one of the city officials, just much more egregious. And here, this conduct doesn't rise to that level. It also, again, doesn't involve the machinery of state government, which was in the Garcia case one of the distinguishing features. Well, I think, I think the complaint to the head of his department, the head of the plaintiff's department, is more chilling than anything done in Knockie. And the district court agreed that that was perhaps the closest to coming to the machinery of government. And if the complaint had been acted on, and this was a lawsuit against the chair of the department, that they had taken action because of that, I think perhaps that could, could rise. But the complaint was rejected. Professor Linder didn't have any greater weight in making that complaint as a, you know, member of the university community than, you know, anyone else writing in to the chair of the department and making a complaint. And so that's something that anyone could do without the exercise of state power. And the exercise of state power was restrained and was not used. Professor Linder, or Dr. Brown, pleads that he continues to have the support of his chair and the department as well. So that action ultimately wasn't any exercise of state power as well. Unless the court has any other questions, we would ask that the district court judgment be affirmed. And this was removed, right? Yes, the state removed this into federal court. The state and the university wanted to be in federal court. We did, and we were not completely successful in staying in federal court. Lots of ironies. Thank you. Thank you, Your Honor. May it please the court. Thank you, Your Honor. I'd like to start, if I may, briefly with the discussion about whether additional power is required under state law. We heard that in the briefs and we heard that on the argument from the state this morning. And I want to bring your attention to the footnote 15 of the West case. It cites Griffin v. Maryland, which we've cited as well. And it says, really without equivocation, that the fact that a state employee's role parallels one in the private sector is not, by itself, reason to conclude that the former is not acting under color of state law in performing his duties. If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity. That's footnote 15 of the West v. Adkins case. Now, just give me a few words. What is the state action? The state action is Linder acting within the scope of his employment, using his position at the University of Iowa. Give me a specific action where he was using his authority. He used his authority when he wrote both the articles. He used his authority when he filed an interpretation. Used his authority? He identified himself. He identified himself, and it's our position as we plead in the complaint, Judge, that he identified himself as a University of Iowa professor to amplify his message. Because any attorney who does due diligence on expert witnesses will look at... Okay, what other actions? I mean, the wearing a T-shirt is obnoxious, but he wasn't acting for the University of Iowa when he did that. I think that that may be fair. The state does concede that he was acting within the scope of his employment when he was doing that. The other action would be going to Dr. Creeder, who is Dr. Brown's supervisor, to levy these defamatory falsehoods to his supervisor. And so those are the actions that we have specifically pled in the complaint. But how about Mr. Langholz's point that when he does this, he's exercising his sort of authority as a law professor no different than had he been at a private university? That it wasn't anything magic about the fact that he was at the University of Iowa. It was his status as a law professor. Under West v. Atkins and its progeny, Judge, what we're looking for is are they acting within the scope of their employment? Footnote 15 that I just mentioned. That just doesn't do it. I would never expand scope of color of law that way. That would take away half the business of the state courts and put it all in our laps. That just doesn't fly. And so under Dotson and under the Montana case, there are rare exceptions to this because it's the Lugar test. What rare exceptions? There are exceptions for public defenders who are acting as adverse to the state and clergy. And those are very specific exceptions. Is there a page, say, where the Supreme Court said, and what we're doing here for a defender or for clergy is a rare exception? Well, the West v. Atkins says that Dotson was the only time the Supreme Court has held that ... It doesn't say it's rare. It doesn't say it's rare. That's fair. That's my paraphrase. It says it was the one time. And the Eighth Circuit in Montana also said and recognized that West said that Dotson was the only case where the Supreme Court has said that a state actor, within the scope of their employment, performing their official duties does not act under color of law. So for the reasons in our brief and this morning, we ask that this report judgment be reversed. Thank you. Very good. Thank you.